UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

Present: The Honorable     CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:           Attorneys Present for Defendants:

Elliot Tiomkin                    Surekha Shepherd

**Proceedings:**     ZOOM HEARING RE: PARTIAL MOTION FOR SUMMARY
JUDGMENT (Dkt. 93, filed on FEBRUARY 13, 2023)

## I.     INTRODUCTION

On December 15, 2017, plaintiffs Richard Payne, Janchai Payne, and Kaylie Payne filed this action against defendants the City of Los Angeles (the "City"), Los Angeles Chief of Police Charlie Beck ("Chief Beck"), and Does 1 through 100.  Dkt. 1.  The action arises out of an incident at the Paynes' residence involving the detention of Richard Payne by Los Angeles Police Department ("LAPD") officers responding to two 911 calls made by Kaylie Payne.

On October 16, 2018, plaintiffs filed the operative first amended complaint.  Dkt. 34 ("FAC").   In addition to Chief Beck and the City, the FAC names as defendants nine individual LAPD officers, Officers Lopez, Sanacore, Lisenby, Aboyte, Reinhardt, Torres, Ramirez, Checa, and Todd (collectively, the "individual officers").  Id.

The FAC brings claims for (1) unreasonable search and seizure – detention and arrest, pursuant to 42 U.S.C. § 1983, against all defendants; (2) unreasonable search and seizure – excessive use of force, pursuant to 42 U.S.C. § 1983, against all defendants; (3) municipal liability for an unconstitutional custom or policy, pursuant to 42 U.S.C. § 1983, against all defendants; (4) false arrest and false imprisonment against all defendants; (5) assault and battery against Officers Aboyte, Sanacore, Lisenby, and/or Ramirez, the City, and Chief Beck; (6) negligence against all defendants; (7) violation of the Bane Civil Rights Act, California Civil Code § 52.1, against all defendants; (8)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

intentional infliction of emotional distress against all defendants; and (9) negligent infliction of emotional distress, against all defendants. Id.

On February 13, 2023, defendants Chief Beck and the City (hereinafter "defendants") filed a partial motion for summary judgment. Dkt. 93 ("MSJ"). Defendants move for summary judgment on (1) all claims against Chief Beck in his individual capacity; (2) all claims brought by Kaylie Payne; (3) all claims brought by Janchai Payne; and (4) all claims brought by Richard Payne that are based on illegal detention and arrest. Id. at 1. On June 5, 2023, plaintiffs filed an opposition to defendants' partial motion for summary judgment. Dkt. 102 ("Opp."). On June 19, 2023, defendants filed a reply in support of their partial motion for summary judgment. Dkt. 105 ("Reply).

On July 3, 2023, the Court held a hearing on Defendants' partial motion for summary judgment. Defendants' partial motion for summary judgment is presently before the Court. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.[1]

### A.   Dispute Leading to Kaylie Payne's 911 Calls

On November 5, 2016, Richard Payne was residing at 10118 Babbitt Ave, Northridge, CA, with his wife Janchai Payne, their two daughters, Kaylie Payne (age thirteen) and M.P. (age four), and Richard Payne's mother Margaret Payne. Defendants' Statement of Uncontroverted Facts, dkt. 93-1 ("DSUF") ¶ 5. At approximately 12:30pm

---

[1] The parties assert numerous evidentiary objections to the other side's evidence. See dkts. 102-1, 106. "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." Capitol Records, LLC v. BlueBeat, Inc., 765 F. Supp. 2d 1198, 1200 (C.D. Cal. 2010).

To the extent that the Court relies on objected-to evidence, it has considered and **OVERRULED** the parties' evidentiary objections. Evidence not considered by the Court is not addressed in this order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                                    **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

on that day, the LAPD received two 911 calls from Kaylie.  <u>Id.</u> ¶ 6; Plaintiff's Statement of Disputed Facts, dkt. 102-1 ("PSDF") ¶ 6.  According to defendants, the 911 dispatchers informed LAPD officers that Kaylie indicated there was a domestic violence incident at 10118 Babbitt Ave and that she took herself and another family member into a rear room.  DSUF ¶¶ 7-8.  Defendants additionally contend that the 911 dispatcher informed officers that there was screaming heard on the line and that Richard made verbal threats of suicide ideations and was arguing in the garage with Janchai while holding his gun safe.  <u>Id.</u> ¶¶ 8-10.

According to plaintiffs, Kaylie was arguing with her parents about her cell phone use, and her parents disagreed with each other about how to address the cell phone issue. Dkt. 103, Tiomkin Decl. Exh. 2 ("Kaylie Decl.") at ¶¶ 4-7.  Kaylie states that no physical threats or violence occurred during the incident.  <u>Id.</u> ¶ 5.  However, she called 911 because she "believed suddenly that [her father] could kill himself over this argument and [she] was so upset."  <u>Id.</u> ¶¶ 7-8.  The 911 operator calmed her down and she hung up but then panicked and called back.  <u>Id.</u> ¶ 8.  When asked if there were any weapons in the house, Kaylie told the operator that there was a gun safe containing a gun in the house. <u>Id.</u>

## B.    LAPD Officers' Arrival at the Payne Residence

LAPD Officers Sanacore, Lopez, Lisenby, Aboyte, Reinhardt, and Torrres were on patrol at the time when Kaylie called 911 and were dispatched to 10118 Babbitt Ave. DSUF ¶ 4.  The officers were in full uniform and in marked black and white vehicles.  <u>Id.</u> At that time, use of body cameras had not been implemented in their division.  <u>Id.</u>  The parties largely disagree regarding the events that took place at 10118 Babbitt Ave following the officers' arrival.

According to defendants, when Officer Lopez arrived, Kaylie was crying and appeared to be distressed.  <u>Id.</u> at 11.  The officers "heard distressed screaming coming from the home [] but were unable to see where it was coming from."  <u>Id.</u>  Officer Lopez could see a man and a woman inside the residence "holding a small grey box," and the officers saw the man run to another part of the house.  <u>Id.</u> at 12.  Kaylie, Margaret, and Janchai stood in front of the front door to the residence and would not allow the officers to enter.  <u>Id.</u> at 13.  Officer Lopez and Officer Sanacore instructed Kaylie, Margaret, and Janchai to move aside so that the officers could enter the residence.  <u>Id.</u> at 14.  Officer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

Sanacore then used his right hand to move Kaylie out of the doorway. Id. ¶¶ 15-16. Kaylie fell down on the steps leading up to the house when Officer Sanacore pushed her. Id. ¶ 16. Kaylie then stood up and took several steps back toward the entrance of the residence. Id. ¶ 17. Shortly after Kaylie fell, Janchai physically resisted Officer Sanacore and prevented him from entering the residence. Id. ¶ 18. The officers eventually moved the three women out of the doorway, entered the residence, and unholstered their guns but did not point them at Margaret, Kaylie, or Janchai. Id. ¶ 19.

Plaintiffs' account of the officers' arrival differs substantially. According to plaintiffs, when the officers arrived, Kaylie went outside to tell them that they were not needed and that she had made a mistake in calling 911. Kaylie Decl. ¶¶ 11-12. While Kaylie was standing in the entryway, Officer Sanacore "suddenly grabbed [her] and threw [her] out of the front doorway." Id. ¶ 13. Kaylie states that she was unable to stop the force of the physical push and fell onto the cement sidewalk. Id. ¶ 14. She maintains that she was not blocking the door or resisting the officers' entrance when this happened. Id. ¶ 15. The officers then pulled out their guns and entered the home. Id. ¶ 17. According to Kaylie, they "entered the home without speaking to [her] or any other witness, gathering information, or assessing what had occurred prior to the officer[s'] arrival." Id. ¶ 18. Janchai told the officers that the gun was in the bedroom and securely locked in the gun safe. Id. She proceeded to bring the gun safe to the officers. Id. She then informed them that Richard was in the garage and that he did not have any weapons on him "and had not done [any]thing wrong." Id.

Footage from the Payne's security camera shows Kaylie being pushed down the front steps of the house and falling onto the concrete. MSJ, Exh. K. The footage then shows an officer pushing Janchai in front of the house. Id. It is not clear from the video whether the three women were blocking the doorway. Id.

### C.   LAPD Officers' Detention of Richard Payne

According to defendants, the officers entered the residence and detained Richard in the garage and "the Fire Department [was] called immediately because he complain[ed] of chest pain." DSUF ¶ 20.

In his declaration, Richard states that when the officers arrived at his home with guns drawn, he "had no idea what was going on" and called 911 for an explanation. Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

103, Tiomkin Decl. Exh. 1 ("Richard Decl.") ¶ 12.  Richard was in the garage on the phone with the 911 dispatcher when Officers Aboyte, Sanacore, Lisenby, and Ramirez ran into the garage with their weapons drawn.  Id. ¶ 13.  Officer Lopez entered the garage thereafter.  Id.  Richard sat on the floor with his legs crossed and his hands in the air, holding only his cell phone.  Id. ¶ 15.  According to Richard, he was "forcefully grabbed by the officers and slammed against the floor," "without any warning or orders."  Id. ¶ 17.  The officers then picked him up and pushed him against the wall, placed handcuffs on him, and fastened his hands and feet together.  Id.  Richard states that he did not resist the officers in any manner and complied with their orders.  Id. ¶ 18.  Notwithstanding his cooperation, the officers repeatedly slammed him on the ground, and, at one point, an officer placed his knee against Richard's neck and choked him while another officer stood on his thigh.  Id.  Richard repeatedly complained that he could not breathe and eventually lost consciousness.  Id. ¶¶ 18, 20.

Richard was detained pursuant to California Welfare and Institutions Code § 5150 and transported to Northridge Hospital.  DSUF ¶ 21.  At Northridge Hospital, doctors committed Richard and hospitalized him pursuant to a psychiatric hold for five days.  Id. ¶ 22.  According to Richard, "[t]hroughout the entire process of being transported to the hospital, [he] was handcuffed to the gurney," and "[d]espite having no evidence, and no statements by any of the family members, the officers . . . falsely stated to the hospital that [he] was suicidal."  Richard Decl. ¶ 21.  Richard states that he was severely traumatized by his hold at the hospital for five days.  Id. ¶ 22.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                               **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

888 (1990); see Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322; see Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.  DISCUSSION

### A.   Unreasonable Search and Seizure Claims

The FAC brings claims for unreasonable search and seizure in the form of detention and arrest and excessive force, pursuant to § 1983, against the individual officers, the City, and Chief Beck.

#### 1.   Claims Against the Individual Officers

In their partial motion for summary judgment, defendants contend that the individual officers have not been served and therefore must be dismissed as defendants.  MSJ at 4.  Plaintiffs do not address this argument in their opposition.  See generally Opp.  Here, the original complaint was filed on December 15, 2017, and the operative FAC was filed on October 16, 2018.  See dkts. 1, 34.  The record shows that plaintiffs have only served the City and Chief Beck.  Dkts. 16-17.  Accordingly, plaintiffs have failed to comply with Federal Rule of Civil Procedure 4(m), which requires that plaintiffs serve defendants within 90 days of the complaint being filed.  See Fed. R. Civ. P. 4(m).  On this ground, the Court finds it appropriate to dismiss the individual officers from this action without prejudice.  See id. ("If a defendant is not served within 90 days after the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

### 2.    Claims Against Chief Beck

Defendants next argue that the FAC does not allege integral participation by Chief Beck in the events giving rise to the alleged unreasonable search and seizure. They contend that this warrants dismissal of plaintiffs' unreasonable search and seizure claims against Chief Beck because "[i]ntegral participation or personal involvement is required before an officer can be held liable for a 1983 violation." Plaintiffs do not address this argument in their opposition.

"Generally, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983." Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001). "A supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Id. (quoting Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc)). "The 'sufficient causal connection' may be shown by evidence that the supervisor 'implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights.'" Wesley v. Davis, 333 F. Supp. 2d 888, 892 (C.D. Cal. 2004) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).

Here, plaintiffs have not set forth any allegations or evidence showing that Chief Beck had any personal involvement in the alleged unreasonable search and seizure of plaintiffs. Indeed, Chief Beck was not present at the Payne residence and is not alleged to have communicated with the officers during the incident or otherwise participated in the incident in any way. Furthermore, plaintiffs have not pointed to any evidence demonstrating a causal connection between Chief Beck's conduct and the alleged constitutional violation. In light of these findings and plaintiffs' apparent non-opposition to defendants' motion on this ground, the Court concludes that summary judgment should be granted in favor of defendants on plaintiffs' unreasonable search and seizure claims against Chief Beck. See Wesley, 333 F. Supp. 2d at 892 (granting summary judgment on claims against supervisor defendants where "[t]here is no evidence whatsoever that [they] either (1) were personally involved in the alleged constitutional deprivation or (2) acted in a manner so as to be denominated a sufficient causal connection to [p]laintiff's alleged constitutional injury") (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

### B.     Municipal Liability

1.     <u>Underlying Constitutional Violations</u>

Section 1983 provides for a claim for relief against a person who, acting under color of state law, deprives another of rights guaranteed under the U.S. Constitution. "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Defendants contend that no constitutional violations occurred in connection with the use of force against Kaylie and Janchai and in connection with the detention and arrest of Richard. Accordingly, defendants argue, because there were no underlying constitutional violations, plaintiffs' constitutional claims against the City fail.

### *a. Use of Excessive Force Against Kaylie and Janchai*

An excessive force claim is analyzed under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989). Reasonableness of force is assessed from the perspective of a reasonable officer at the scene. Id. The relevant inquiry is whether officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397 (quotation marks and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396–97. However, "it is equally true that even where some force is justified, the amount actually used may be excessive." Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).

Courts apply a balancing test to determine whether force used is reasonable. Graham, 490 U.S. at 396. First, courts must assess the severity of the intrusion on the individual's Fourth Amendment rights "by evaluating the type and amount of force inflicted." Miller v. Clark Cnty., 340 F.3d 959, 964 (9th Cir. 2003). Then courts must weigh this severity against the countervailing governmental interests, which are evaluated by looking at (a) whether the suspect was actively resisting or attempting to evade arrest by flight; (b) the severity of the crime at issue; and (c) whether the suspect posed an immediate threat to the safety of the officers or others. Lal v. California, 746 F.3d 1112, 1117 (9th Cir. 2014). This list is not exhaustive, and courts also consider whether the officer warned the suspect prior to use of force, Bryan v. MacPherson, 630 F.3d 805, 831

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                                    **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

(9th Cir. 2010); the parties' relative culpability, <u>Espinosa v. City & Cnty. of San Francisco</u>, 598 F.3d 528, 537 (9th Cir. 2010); and "whether there were less intrusive means of force that might have been used," <u>Glenn v. Washington Cnty.</u>, 673 F.3d 864, 876 (9th Cir. 2011).  Nonetheless, the "most important" factor is whether the suspect posed an "immediate threat to the safety of the officers or others."  <u>Bryan</u>, 630 F.3d at 826.

Contrary to defendants' contention, the Court finds that the record is replete with factual disputes pertaining to whether the officers' use of force against Janchai and Kaylie was reasonable.  The security camera footage shows Kaylie being pushed to the ground and falling down the concrete steps in front of the house.  It additionally shows an officer pushing Janchai several times in front of the house.  Although defendants characterize this force as "minimal," MSJ at 5-6, the Court finds that the severity of force used is a fact question better suited for the jury.

Moreover, the circumstances leading up to this use of force are largely in dispute. Defendants contend that the officers heard screaming inside of the house and that, based on the information from the 911 dispatcher, they reasonably believed that Richard had a gun and posed a danger to himself and to others.  They additionally contend that Margaret, Janchai, and Kaylie were blocking the front door.  According to defendants, based on these circumstances, the officers had a strong countervailing interest in using force against Janchai and Kaylie.  However, plaintiffs maintain that the three women were not blocking the door, that Kaylie informed the officers that she had made a mistake in calling 911, and that Janchai told the officers that the gun was in the gun safe in her bedroom.  According to plaintiffs, Janchai subsequently brought the gun safe to the officers.  Kaylie additionally states that the officers did not give any warnings before using force.   The Court finds that all of these disputes pertain to the weight of the government's countervailing interest.  See <u>Lal</u>, 746 F.3d at 1117; <u>Bryan</u>, 630 F.3d at 831. In particular, the dispute over the location of the gun speaks directly to whether the officers or others faced an immediate threat to their safety, which is the "most important" factor in evaluating the government's interest in the use of force.  <u>Bryan</u>, 630 F.3d at 826.

In short, because plaintiffs have set out specific facts raising a factual dispute suited for determination by a jury, summary judgment on the underlying excessive force

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

claims would be inappropriate.  See <u>Anderson</u>, 477 U.S. at 250; Fed. R. Civ. P. 56(c), (e).[2]

>      *b.  Unlawful Detention of Richard*
> The officers detained Richard pursuant to California Welfare and Institutions Code § 5150, which provides as follows:

> Where any person, as a result of a mental disorder, is a danger to himself, or herself, or gravely disabled, a peace officer . . . or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation.

Cal. W&I § 5150.

"To constitute probable cause to detain a person pursuant to section 5150, a state of facts must be known to the peace officer . . . that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself or is gravely disabled." <u>People v. Triplett</u>, 144 Cal. App. 3d 283, 287-88 (1983).  Detention pursuant to § 5150 must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the officer's] belief or suspicion." <u>Id.</u> at 288.

Here, defendants argue that the undisputed facts establish that the officers had probable cause to detain Richard.  Specifically, defendants contend that officers "kn[e]w that there [was] an immediate emergency because there [wa]s screaming on the line,"

---

[2]  It appears to the Court that defendants do not move for summary judgment on claims arising out of the officers' use of force against Richard.  <u>See</u> MSJ at 1.  To the extent that defendants do move for summary judgment on these claims, defendants' motion should be denied in this respect.  Plaintiffs have set forth evidence that the officers slammed Richard into the ground, tied his hands and feet together, and kneeled on his neck until he lost consciousness, notwithstanding his compliance with their demands and the fact that he was visibly unarmed.  Based on these facts, a reasonable jury could find that the use of force against Richard was not reasonable under the circumstances and violated his Fourth Amendment rights.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                   **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|----------|--------------------------|------|--------------|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

"kn[e]w the occupants of the house [we]re scared and believe[d] that danger [wa]s imminent," and "kn[e]w that the father [wa]s potentially a danger to himself . . . because the dispatcher inform[ed] them that he ha[d] suicidal ideations." MSJ at 10.

The Court does not find this argument to be persuasive in light of the factual nature of the probable cause inquiry and the numerous facts in dispute here. See McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984) (explaining that "in a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury"). Richard maintains that he was sitting on the floor in the garage, was unarmed, and did not resist the officers when he was detained. No injuries or threats had occurred, and, according to plaintiffs, Janchai had given the officers the gun safe prior to Richard's detention. Additionally, plaintiffs state that Janchai told the officers that Richard was unarmed and did not pose a threat of violence. These facts, viewed in the light most favorable to plaintiffs, could support a reasonable finding that defendants lacked probable cause to believe that Richard was a danger to himself or others as a result of a mental disorder. See id. ("[S]ummary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause."). Accordingly, the Court finds that summary judgment on Richard's underlying unlawful detention claim would be improper.

2.      Municipal Ratification of Alleged Constitutional Violations

Local government entities may be sued directly under § 1983 when their policies or customs are the moving force behind a constitutional violation. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). The sole basis for municipal liability set forth by plaintiffs is a ratification theory of Monell liability. Opp. at 7-8.

Under the ratification theory, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). For an official's acts to constitute municipal policy, plaintiff must show that policymaking authority for a particular city function was delegated to that official. Hammond v. Cnty. of Madera, 859 F.2d 797, 802 (9th Cir. 1988), abrogated on other grounds, L.W. v. Grubbs, 92 F.3d 894 (9th Cir. 1996). Whether a particular official has "final policymaking authority" is a question of state law. Praprotnik, 485 U.S. at 123. To prove ratification, the plaintiff must present "evidence of a conscious, affirmative choice" by an authorized policy maker. Gillette v. Delmore, 979 F.2d 1342, 1347 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

Cir. 1992).  Thus, "the mere failure to investigate the basis of a subordinate's discretionary decisions" is not enough to create liability.  <u>Praprotnik</u>, 485 U.S. at 130.  Likewise, mere failure to discipline the subordinate does not amount to ratification.  <u>Sheehan v. City & Cnty. of San Francisco</u>, 743 F.3d 1211, 1231 (9th Cir. 2014), <u>reversed in part on other grounds</u>, 135 S. Ct. 1765 (2015).

Plaintiffs argue that Chief Beck ratified the individual officers' alleged unreasonable search and seizure through a "letter in response to the tort claim" and his failure to discipline the officers after the incident.  Opp. at 8.  Plaintiffs argue that "[t]he letter is strong evidence that the Chief of Police ratified the conduct by the officers involved in the incident with plaintiffs."  Plaintiffs do not attach the letter, but their citation to the FAC indicates that they are referring to a June 19, 2017 letter from Thomas Wong, the Chief Claims Investigator, determining that plaintiffs' administrative claim against the City should be denied.  Defendants respond that this letter is insufficient to establish ratification by Chief Beck.  Reply at 2.

The Court is not persuaded by plaintiffs' ratification argument for several reasons.  As an initial matter, the June 19, 2017 letter is not from Chief Beck and does not reference Chief Beck or the LAPD in any way.  Plaintiffs have not offered any theory or evidence to support a conclusion that Chief Beck was involved in the denial of plaintiffs' claim.  Accordingly, the letter does not show that Chief Beck "approve[d] a subordinate's decision" so as to ratify the alleged constitutional violations.  <u>Praprotnik</u>, 485 U.S. at 127.  Furthermore, to the extent that plaintiffs argue that the Chief Claims Investigator is a final policymaker for the purpose of <u>Monell</u> ratification, plaintiffs have not identified any state law establishing that the Chief Claims Investigator has final policymaking authority, as required for a <u>Monell</u> ratification claim.

Moreover, the June 19, 2017 letter appears to be a denial of a claim filed with the City.  The filing of such claims is a prerequisite for suing the City and its employees for money damages.  <u>See</u> Cal. Gov't Code § 945.4; <u>Ovando v. City of Los Angeles</u>, 92 F. Supp. 2d 1011, 1021 (C.D. Cal. 2000) (explaining that presentation of a written claim is a "necessary prerequisite to suing" the city).  If the Court accepts plaintiffs' argument that a claim denial constitutes ratification, then every routine denial of a required claim could give rise to <u>Monell</u> liability in a subsequent lawsuit.  Such a result would be untenable.  Furthermore, the June 19, 2017 letter is a denial of liability, which is not an affirmative approval of the officers' conduct.  Plaintiffs have failed to explain how a denial of liability could constitute ratification of the officers' conduct by an authorized

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                         **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

policymaker.  At oral argument, counsel for plaintiffs conceded that the June 19, 2017 letter does not establish that the City or Chief Beck ratified the conduct here at issue.

For these reasons, the Court concludes that the June 19, 2017 letter does not raise any triable issues as to whether the City ratified the officers' conduct.  Because plaintiffs have not set forth any other evidence of Monell liability, the Court finds it appropriate to grant summary judgment in favor of defendants on plaintiffs' Monell liability claim.

**C.      Plaintiffs' State Law Claims**

      1.      Claims against Chief Beck

Defendants contend that all state law claims against Chief Beck must be dismissed because plaintiffs have not alleged or set forth any evidence establishing Chief Beck's participation in any alleged violations of state law.  MSJ at 17.  Plaintiffs do not respond to this argument in their opposition.  See generally Opp.

As addressed above with respect to plaintiffs' federal law claims, plaintiffs have failed to set forth any allegations or evidence demonstrating that Chief Beck took part in any of the alleged violations of law.  The Court additionally notes that, while the City may be held liable for the conduct of its employees, "[t]he doctrine of respondeat superior is not applicable to the relationship between a supervisor and his subordinate employees."  George F. Hillenbrand, Inc. v. Ins. Co. of North America, 104 Cal. App. 4th 784, 823 (2002).  See also Solis v. California, 2015 WL 12806197, at *3 (C.D. Cal. Jan. 20, 2015) (dismissing respondeat superior claims against supervisors because "[w]hile under California law employers . . . are vicariously liable under respondeat superior for intentional torts," this doctrine does not impose vicarious liability on supervisors "for the torts committed by their subordinates").  Thus, Chief Beck cannot be held vicariously liable for the conduct of the individual officers.  Accordingly, because plaintiffs have not alleged that Chief Beck engaged in any conduct to violate state law, the Court grants summary judgment in favor of defendants on the state law claims against Chief Beck.

The Court notes that, because the individual defendants have been dismissed from this action, the City is the sole remaining defendant.  However, the City may be held liable for the torts of the officers committed while acting in the scope of their employment pursuant to the California Tort Claims Act.  Cal. Gov't Code § 815.2 ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                            'O'

| | | | |
|---|---|---|---|
| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

apart from this section, have given rise to a cause of action against that employee."). The Court therefore considers whether there are factual disputes precluding summary judgment on the state law claims against the City arising out of the officers' conduct.

2.     False Arrest and False Imprisonment

Defendants argue that plaintiffs' claims for false arrest and false imprisonment fail first because the officers had probable cause to detain Richard and second because peace officers are immune from liability for exercising their authority to detain someone pursuant to § 5150 under W&I § 5278. MSJ at 17-18.

"False imprisonment under California law is the 'unlawful violation of the personal liberty of another.'" Martinez v. City of Los Angeles, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting Asgari v. City of Los Angeles, 15 Cal. 4th 744, 757 (1997)). The "tort consists of the nonconsensual, intentional confinement of a person, without lawful privilege." Scofield v. Critical Air Medicine, Inc., 45 Cal. App. 4th 990, 920 (1996) (internal quotation marks omitted). Thus, an arrest made without probable cause may give rise to a false imprisonment claim. See Palato v. Botello, 2012 WL 7018239, at *2 (C.D. Cal. Nov. 15, 2012) ("To state a claim for false arrest and imprisonment . . . , plaintiffs must plead and prove that there was no probable cause to arrest him.").

As the Court concluded above, there are genuine disputes of material fact as to whether the officers had probable cause to detain Richard under § 5150. Accordingly, the false arrest and false imprisonment claim is better decided by a jury.

The Court is also not persuaded by defendants' argument that, under § 5278, individual officers are immune from liability arising out of detentions pursuant to § 5150.

Section 5278 provides that "Individuals authorized under this part to detain a person for 72-hour treatment and evaluation pursuant to Article 1 (commencing with Section 5150) . . . shall not be held either criminally or civilly liable for exercising this authority in accordance with the law." Cal. W&I § 5278. Importantly, this provision applies to the extent that the § 5150 detention is "in accordance with the law." "A decision to detain is 'in accordance with the law' when 'that decision is supported by probable cause.'" MacLellan v. County of Alameda, 2014 WL 934360, at *6 (N.D. Cal. Mar. 5, 2014) (quoting Jacobs v. Grossmont Hospital, 108 Cal. App. 4th 69, 76 (2003)). If a § 5150 detention is not supported by probable cause, then it is not in accordance with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

the law and the immunity provision does not apply.  <u>Heater v. Southwood Psychiatric Center</u>, 42 Cal. App. 4th 1068, 1084 (1996).[3]

Because there are genuine disputes of material fact pertaining to whether the officers had probable cause, the Court cannot conclude that the individual officers are immune from liability at this stage.  Accordingly, defendants' argument is unavailing, and the Court denies defendants' motion for summary judgment on plaintiffs' claim for false arrest and false imprisonment.

       3.     <u>Assault and Battery</u>

Defendants only move for summary judgment on the assault and battery claims brought by Janchai and Kaylie.  MSJ at 18.  Defendants argue that the officers did not use unreasonable force against Janchai or Kaylie and, therefore, their assault and battery claims fail.  <u>Id.</u>

---

[3]  At oral argument, counsel for defendants contended that the § 5278 immunity provision could apply where an officer did not have probable cause but reasonably believed that probable cause existed.  This argument is contrary to the language of § 5278, which only grants immunity to authorized parties who detain individuals "in accordance with the law."  Section 5150 plainly requires that the officer have "probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled."  Cal. W&I § 5150(e).  Thus, a detention that is not supported by probable cause is contrary to the applicable law.  This conclusion is in line with California courts' articulation of the purpose of § 5278.  "Section 5278 was intended to provide immunity for claims based on conduct that is <u>expressly authorized</u> by [§ 5150] but would otherwise constitute a civil or criminal wrong."  <u>Jacobs</u>, 108 Cal. App. 4th at 78 (emphasis added).  This provision is necessary because, "without the immunity provided by section 5278, an involuntary detention and treatment without consent would arguably constitute kidnapping, false imprisonment, or battery."  <u>Id.</u>  Put otherwise, § 5278 seeks to protect authorized individuals from liability that could arise even when a detention meets the § 5150 requirements.  Thus, it "extends to claims based on facts that are inherent in an involuntary detention pursuant to [§] 5150."  <u>Id.</u>  It does not immunize officers for conduct not authorized by § 5150 or another law, even if that conduct is well intentioned.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

Under California law, the elements of a civil battery are (1) defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to the plaintiff.  Piedra v. Dugan, 123 Cal. App. 4th 1483, 1495 (2004).  "A battery is not committed by a police officer unless the plaintiff proves the officer used unreasonable force."  Venegas v. Cnty. of Los Angeles, 153 Cal. App. 4th 1230, 1248 (2007).  To prevail on a civil assault claim, a plaintiff must "demonstrat[e] an unlawful intent by one person to inflict immediate injury on the person of another then present."  Hardin v. Wal-Mart Stores, Inc., 813 F. Supp. 2d 1167, 1178 (E.D. Cal. 2011).

Having found above that genuine issues of material fact exist as to whether the use of force against Janchai and Kaylie was reasonable, the Court concludes that summary judgment on their assault and battery claims would be inappropriate.  Therefore, the Court denies defendants' motion on this ground.

4.      Negligence

Defendants contend that plaintiffs' negligence claims fail because the officers had probable cause to arrest Richard and their use of force was reasonable.  MSJ at 19.  As concluded above, genuine factual disputes exist with respect to both of these issues.  Thus, summary judgment on plaintiffs' negligence claims would be inappropriate.  See Celotex, 477 U.S. at 323.  Additionally, defendants again argue that the individual officers are immune from suit in connection with Richard's detention due to the grant of immunity in § 5278.  Id.  Because § 5278 only provides immunity for lawful detentions and genuine issues of fact exist regarding whether the officers had probable cause, the Court concludes that the officers are not immune as a matter of law.  See MacLellan, 2014 WL 934360, at *6.  Accordingly, the Court denies defendants' motion for summary judgment on plaintiffs' negligence claims.

5.      Violation of Bane Civil Rights Act

The Bane Civil Rights Act, California Civil Code § 52.1, provides a cause of action against a person who interferes or attempts to interfere "by threat, intimidation, or coercion" with an individual's exercise or enjoyment of rights secured by federal or state law.  Cal. Civ. Code § 52.1(b).  It was "intended to address only egregious interferences with constitutional rights, not just any tort.  The act of interference with a constitutional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                              **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|----------|--------------------------|------|--------------|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

right must itself be deliberate or spiteful." Shoyoye v. Cnty. of Los Angeles, 203 Cal. App. 4th 947, 959 (2012).  To prevail on a Bane Act claim, a plaintiff must therefore prove (1) a violation of a constitutional or statutory right (2) by intimidation, threats, or coercion.  Venegas v. Cnty. of Los Angeles, 153 Cal. App. 4th 1230, 1242 (2007). "[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018).  However, the Bane Act requires a specific intent to violate the plaintiff's constitutional rights.  Id.

Defendants argue that there can be no action under the Bane Act because plaintiffs have failed in establishing underlying constitutional violations. MSJ at 20-21.  It further argues that there is no evidence of the officers' specific intent to violate plaintiffs' rights. Id. at 20.

Defendants' first argument fails in light of the Court's conclusion above that genuine disputes of material fact exist regarding plaintiffs' Fourth Amendment claims.

The Court is also not persuaded by defendants' second argument.  To find the requisite intent, "the jury must find that the defendants 'intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances.'" Reese, 888 F.3d at 1045 (quoting States v. Reese, 2 F.3d 870, 885 (9th Cir. 1993)).  [A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." Reese, 888 F.3d at 1045 (internal citation omitted).

Viewing the evidence in the light most favorable to plaintiffs, a reasonable jury could conclude that the officers acted with the specific intent to use more force than was necessary under the circumstances and to detain Richard without probable cause.  In particular, the disputes about the circumstances preceding the officers' pushing Janchai and Kaylie—including whether Janchai, Kaylie, and Margaret were blocking the front door and resisting the officers—are relevant to a determination of whether the officers intended to act reasonably.  And the factual disputes relating to whether the officers reasonably believed that Richard posed a danger to himself and others speak to their intent to violate his constitutional rights.  In sum, the many factual disputes here preclude a conclusion that the officers lacked the requisite intent for a violation of the Bane Act.

Accordingly, the Court denies defendants' motion for summary judgment on plaintiffs' Bane Act claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| | |
|---|---|
| Case No. | 2:17-CV-09044-CAS (KSx) |
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. |

| | |
|---|---|
| Date | July 3, 2023 |

6.      Intentional Infliction of Emotional Distress

To prevail on an intentional infliction of emotional distress claim under California law, a plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Smith v. BP Lubricants USA, Inc., 64 Cal. App. 5th 138, 147 (2021) (internal citations omitted).

Defendants contend that the officers cannot be held liable for intentional infliction of emotional distress in connection with Richard's arrest because they had probable cause. MSJ at 21 ("If a Plaintiff's arrest was 'valid and lawful, nothing can be considered 'outrageous' for the purposes of IIED" (citing Cornel v. Hawaii, 501 F. Supp. 3d 927, 947 (D. Haw. 2020)). Defendants further contend that the use of force against Kaylie and Janchai was reasonable and therefore cannot give rise to a claim for intentional infliction of emotional distress. MSJ at 21.

As concluded above, factual disputes exist as to whether the officers had probable cause to detain Richard pursuant to § 5150 and as to the reasonableness of the force used against Kaylie and Janchai under the circumstances. The Court thus cannot conclude as a matter of law that the intentional infliction of emotional distress claims fail on these grounds. Defendants' motion for summary judgment on plaintiffs' claims for intentional infliction of emotional distress is therefore denied.

7.      Negligent Infliction of Emotional Distress

Under California law, "[n]egligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." Huggins v. Longs Drug Stores California, Inc., 6 Cal. 4th 124, 129 (1993). A claim for negligent infliction of emotional distress may proceed under a bystander theory or a direct victim theory. Id. The two theories differ due to the "source of the duty owed by the defendant to the plaintiff." Burgess v. Superior Court, 2 Cal. 4th 1064, 1072 (1992). "'Bystander claims' are typically based on breach of a duty owed to the public in general . . . whereas a right to recover for emotional distress as a 'direct victim' arises from the breach of a duty that is assumed by the defendant or imposed on the defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|----------|------------------------|------|--------------|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

as a matter of law, or that arises out of the defendant's preexisting relationship with the plaintiff." <u>Huggins</u>, 6 Cal. 4th at 129-30 (internal citations omitted).

Defendants raise several arguments in support of their motion for summary judgment on the negligent infliction of emotional distress claims. First, defendants argue that Richard's claim for negligent infliction of emotional distress in connection with his detention fails because the officers' conduct in detaining Richard pursuant to § 5150 was discretionary and not ministerial. MSJ at 22. In making this argument, defendants appear to be asserting that a failure to comply with § 5150 cannot give rise to a negligent infliction of emotional distress claim because § 5150 grants officers discretion. But the rule on which defendants rely applies to claims based on breach of a statutory duty. <u>See</u> <u>de Villers v. Cnty of San Diego</u>, 156 Cal. App. 4th 238, 256 (2007) (explaining that a claim that a public entity violated a mandatory duty imposed by statute requires that the enactment at issue be obligatory, not discretionary). Plaintiffs need not allege breach of a duty created by statute to prevail on their negligent infliction of emotional distress claims against the City based on a vicarious liability theory. <u>See id.</u> at 262 (distinguishing between direct liability claims against a public entity, "which must be founded on a specific statute either declaring the entity liable or creating a specific duty of care" and vicarious liability of a public entity for torts committed by employees in the scope of their employment).

Second, defendants argue that plaintiffs' claims fail because California courts only recognize direct victim claims in narrow factual scenarios, such as the mishandling of corpses, the negligent misdiagnosis of a disease that could potentially harm another, and the negligent breach of a duty arising out of a preexisting relationship. Reply at 6. While it is true that direct victim claims are recognized only in limited circumstances, <u>see</u> <u>Huggins</u>, 6 Cal. 4th at 129-30, none of which appear to be present here, plaintiffs may still proceed under the bystander theory. To prevail on a negligent infliction of emotional distress claim as a bystander, a plaintiff must show that she "(1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness." <u>Fluharty v. Fluharty</u>, 59 Cal. App. 4th 484, 491 (1997) (internal quotation marks omitted).

Defendants have not explained why plaintiffs' bystander claims fail as a matter of law, and it appears to the Court that there are numerous factual disputes relevant to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                        **'O'**

| Case No. | 2:17-CV-09044-CAS (KSx) | Date | July 3, 2023 |
|---|---|---|---|
| Title | RICHARD PAYNE, ET AL. V. CITY OF LOS ANGELES, ET AL. | | |

events giving rise to plaintiffs' claims, including the severity of the force used against the plaintiffs and the reasonableness of the officers' conduct under the circumstances.  In light of these factual disputes, summary judgment would be inappropriate.

Third, defendants argue that plaintiffs cannot allege that the conduct giving rise to a claim for intentional infliction of emotional distress also gives rise to a claim for negligent infliction of emotional distress.  Id. at 22-23.  This argument is premature.  Assuming that the intentional infliction of emotional distress claims are inconsistent with the negligent infliction of emotional distress claims, this inconsistency does not preclude the claims from proceeding to trial.  See Johnson v. Cnty. of Los Angeles, 2014 WL 12606648, at *4 (C.D. Cal. Sept. 17, 2014) (explaining that "at the summary judgment phase, [] what counts" is whether there are "triable issue[s]," not whether claims are based on inconsistent theories).

Finally, defendants again raise the argument that the officers are immune from liability arising out of a § 5150 hold.  For the reasons set forth above, there are triable issues regarding whether the § 5150 hold was lawful, and, therefore, the officers are not immune as a matter of law.  In sum, the Court finds defendants' arguments to be unpersuasive and thus denies defendants' motion for summary judgment on plaintiffs' claims for negligent infliction of emotional distress.

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' motion for summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 21 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |